**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| TIFFANY BRUNDAGE and ANNA GARR, individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>  v.<br><br>800-FLOWERS, INC., D/B/A 1-800-FLOWERS.COM, HARRY & DAVID, PERSONALIZATION MALL, SHARI'S BERRIES, 1-800-BASKETS.COM, SIMPLY CHOCOLATE, FRUIT BOUQUETS.COM, CHERYL'S COOKIES, THE POPCORN FACTORY, WOLFERMAN'S BAKERY, AND VITAL CHOICE,<br><br>        Defendant. | Case No. 2:24-cv-08894-SJB-JMW |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S
MOTION TO COMPEL ARBITRATION**

By:   */s/ Elliot O. Jackson*
     Elliot Jackson
     New York Attorney Reg. No. 6076798
     Email: ejackson@hedinllp.com
     Frank S. Hedin*
     Email: fhedin@hedinllp.com
     **HEDIN LLP**
     1395 Brickell Ave., Suite 610
     Miami, Florida 33131-3302
     Telephone:   (305) 357-2107

*Counsel for Plaintiffs and Putative Class*

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ................................................................................................ 1

II.   FACTUAL BACKGROUND ............................................................................. 4

III.  LEGAL STANDARD ........................................................................................ 5

IV.   ARGUMENT ..................................................................................................... 6

   A.   Defendant Fails to Establish the Existence of an Agreement to Arbitrate. ....................... 6

      i... Defendant's Evidence Fails to Establish that Plaintiff Brundage Agreed to Arbitrate her Claims .......................................................................................................... 7

         1.    Plaintiff Brundage Lacked Notice and Assent to the Cheryls.com Purchase-Wrap Agreement. ............................................................................. 8

         2.    Plaintiff Brundage Lacked Notice and Assent to the Personalizationmall.com Purchase-Wrap Agreement. ........................................ 14

      ii.... Defendant's Evidence Fails to Establish that Plaintiff Garr Agreed to Arbitrate her Claims ...................................................................................................... 19

         1.    Plaintiff Garr Lacked Notice and Assent to the 1800flowers.com Purchase-Wrap Agreement. ............................................................................. 20

         2.    The 1800Flowers.com TOU Do Not Apply Retroactively. ........................ 23

   B.   Defendant's Motion Fails to Invoke Prior Conduct as Requisite Notice ......................... 25

   C.   Defendant's Request for a Stay Should Be Denied ........................................................ 27

V.    CONCLUSION ................................................................................................ 27

CERTIFICATE OF SERVICE ................................................................................. 28

WORD COUNT CERTIFICATION ........................................................................ 28

# TABLE OF AUTHORITIES

**CASES**                                                                          **Page(s)**

*Applebaum v. Lyft, Inc.*,
   263 F. Supp. 3d 454 (S.D.N.Y. 2017) .......................................................................17, 18, 22

*Bank Julius Baer & Co. v. Waxfield Ltd.*,
   424 F.3d 278 (2d Cir. 2005).............................................................................................23

*Barrows v. Brinker Rest. Corp.*,
   36 F.4th 45 (2d Cir. 2022).................................................................................................11

*Bassett v. Elec. Arts Inc.*,
   2015 WL 1298644 (E.D.N.Y. Feb. 9, 2015) ...............................................................25, 26

*Bellevue v. Exxon Mobile Corp.*,
   2019 WL 1459041 (E.D.N.Y. Apr. 2, 2019) ....................................................................24

*Bensadoun v. Jobe-Riat*,
   316 F.3d 171 (2d Cir. 2003).............................................................................................2, 6

*Benson v. Double Down Interactive, LLC*,
   798 F. App'x 117 (9th Cir. 2020) .....................................................................................26

*Berger v. JetBlue Airways Corp.*,
   2024 WL 4107243 (E.D.N.Y. Sept. 6, 2024) .................................................................11, 21

*Berkson v. Gogo LLC*,
   97 F. Supp. 3d 359 (E.D.N.Y. 2015) .............................................................................17, 21

*Berman v. Freedom Financial Network, LLC*,
   30 F.4th 849 (9th Cir. 2022) ..........................................................................................18, 21

*Bologna v. Wilson*,
   2025 WL 2792698 (E.D.N.Y. Oct. 1, 2025)......................................................................11

*Bueche v. Fid. Nat. Mgmt. Servs., LLC*,
   2013 WL 3283508 (E.D. Cal. June 27, 2013) ..................................................................23

*Calderon v. Breadberry Inc.*,
   2023 WL 1861639 (E.D.N.Y. Feb. 9, 2023).....................................................................24

*Carruth v. KD Creatives, Inc.*,
   2025 WL 2623291 (E.D. Cal. Sept. 11, 2025)...................................................................16

*Chambers v. Time Warner, Inc.*,
  282 F.3d 147 (2d Cir. 2002) ................................................................................6

*Davitashvili v. Grubhub Inc.*,
  131 F.4th 109 (2d Cir. 2023) ..............................................................18, 19, 21

*DiTella v. TransUnion*, LLC,
  2024 WL 3594567 (S.D.N.Y. July 31, 2024) .......................................................5

*Edmundson v. Klarna, Inc.*,
  85 F.4th 695 (2d Cir. 2023) ............................................................................7, 8

*Faroque v. Park W. Exec. Servs.*,
  2017 WL 1214482 (E.D.N.Y. Mar. 31, 2017) ...............................................3, 25

*Feld v. Postmates, Inc.*,
  442 F. Supp. 3d 825 (S.D.N.Y. 2020) ..................................................................6

*Fisher v. Sutton Place/Pinnacle A.M.S.*,
  2008 WL 2095417 (S.D. Ind. May 16, 2008) ................................................18, 21

*Godun v. JustAnswer LLC*,
  135 F.4th 699 (9th Cir. 2025) ........................................................................17, 21

*Helenese v. Oracle Corp.*,
  2010 WL 670172 (D. Conn. Feb. 19, 2010) ........................................................22

*Hines v. Overstock.com, Inc.*,
  668 F. Supp. 2d 362 (E.D.N.Y. 2009) .................................................................16

*Hinnant v. Am. Ingenuity, LLC*,
  554 F. Supp. 2d 576 (E.D. Pa. 2008) ..................................................................23

*Holick v. Cellular Sales of New York, LLC*,
  802 F.3d 391 (2d Cir. 2015) .....................................................................3, 24, 25

*In re Zappos.com, Inc., Customer Data Sec. Breach Litig.*,
  893 F. Supp. 2d 1058 (D. Nev. 2012) .............................................................15, 22

*Interbras Cayman Co. v. Orient Victory Shipping Co., S.A.*,
  663 F.2d 4 (2d Cir. 1981) ...................................................................................10

*Interocean Shipping Co. v. Nat'l Shipping & Trading Corp.*,
  462 F.2d 673 (2d Cir. 1972) ................................................................................2

*Kai Peng v. Uber Techs., Inc.*,
    237 F. Supp. 3d 36 (E.D.N.Y. 2017) ................................................................6

*Katzman v. C.I.A.*,
    903 F. Supp. 434 (E.D.N.Y. 1995) ..............................................................9, 10

*Litton Fin. Printing Div., a division of Litton Bus. Sys., Inc. v. N.L.R.B.*,
    501 U.S. 190 (1991) ....................................................................................4, 22

*Meyer v. Uber Technologies, Inc.*,
    868 F.3d 66 (2d Cir. 2017) ........................... 6, 7, 9, 14, 15, 17, 18, 19

*Mirror Worlds Techs., LLC v. Facebook, Inc.*,
    588 F. Supp. 3d 526 (S.D.N.Y. 2022) ..........................................................12

*Nguyen v. Barnes & Noble Inc.*,
    763 F.3d 1171 (9th Cir. 2014) ................................................................15, 20

*Nicosia v. Amazon.com, Inc.*,
    834 F.3d 220 (2d Cir. 2016) ..............................................4, 5, 6, 7, 8, 9, 17, 21

*Opals on Ice Lingerie v. Bodylines Inc.*,
    320 F.3d 362 (2d Cir. 2003) ..........................................................................11

*RDK NY Inc. v. City of New York*,
    2024 WL 4333704 (E.D.N.Y. Sept. 28, 2024) ........................................11, 21

*Rocha v. Urban Outfitters, Inc.*,
    2024 WL 393486 (N.D. Cal. Feb. 1, 2024) ..............................................18, 21

*Rotman v. Progressive Ins. Co.*,
    955 F. Supp. 2d 272 (D. Vt. 2013) ................................................................11

*Ryan, Beck & Co. v. Fakih*,
    268 F. Supp. 2d 210 (E.D.N.Y. 2003) ..........................................................24

*Schapp v. MasTec Servs. Co.*,
    2014 WL 1311937 (N.D.N.Y. Mar. 31. 2014) ..............................................24

*Schnabel v. Trilegiant Corp.*,
    697 F.3d 110 (2d Cir. 2012) .................................................................8, 9, 26

*Sgouros v. TransUnion Corp.*,
    2015 WL 507584 (N.D. Ill. Feb. 5, 2015) ....................................................16

*Shehadeh v. Horizon Pharma USA, Inc.*,
   2021 WL 4176254 (S.D.N.Y. Sept. 14, 2021) ............................................................6

*Specht v. Netscape Commc'ns Corp.* ["*Specht I*"],
   150 F. Supp. 2d 585 (S.D.N.Y. 2001) .......................................................................5

*Specht v. Netscape Commc'ns Corp.* ["*Specht II*"],
   306 F.3d 17 (2d Cir. 2002) ........................................................................5, 15, 16

*Starke v. SquareTrade, Inc.*,
   913 F.3d 279 (2d Cir. 2019) ...................................................8, 12, 13, 14, 15, 16, 21

*Strike 3 Holdings, LLC v. Doe*,
   2021 WL 535218 (E.D.N.Y. Feb. 12, 2021) ................................................................2

*Sullivan v. All Web Leads, Inc.*,
   2017 WL 2378079 (N.D. Ill. June 1, 2017) ..........................................................16, 17

*The Few, the Proud, the Forgotten v. United States Dep't of Veterans Affs.*,
   254 F. Supp. 3d 341 (D. Conn. 2017) .......................................................................9

*Thorne v. Square, Inc.*,
   2022 WL 542383 (E.D.N.Y. Feb. 23, 2022) .......................................................10, 11, 20

*Torres v. Universal Music Grp. N.V.*,
   2025 WL 2710114 (S.D.N.Y. Sept. 23, 2025) ............................................................20

*Treinish v. iFit Inc.*,
   2023 WL 2230431 (C.D. Cal. Feb. 2, 2023) ..........................................................18, 21

*Vincent v. Nat'l Debt Relief LLC*,
   2024 WL 3344227 (S.D.N.Y. July 8, 2024) ...................................................14, 16, 21, 27

*Wilson v. Huuuge, Inc.*,
   944 F.3d 1212 (9th Cir. 2019) ............................................................................2, 26

*Wilson v. Redbox Automated Retail, LLC* ["*Redbox I*"],
   448 F. Supp. 3d 873 (N.D. Ill. 2020) ...............................................................19, 22

*Wilson v. Redbox Automated Retail, LLC* ["*Redbox II*"],
   No. 19-cv-01993 (ECF No. 32) (N.D. Ill. Mar. 25, 2021) ..........................................19, 22

*Xerox Corp. v. Loc. 14A, Rochester Reg'l Joint Bd., Xerographic Div. Workers United*,
   128 F.4th 93 (2d Cir. 2025) ..............................................................................22

*Zachman v. Hudson Valley Fed. Credit Union*,
49 F.4th 95 (2d Cir. 2022) ............................................................................................2

Plaintiffs Tiffany Brundage and Anna Garr submit this response and incorporated memorandum of law in opposition to Defendant's Motion to Compel Arbitration (the "Motion"),[1] filed by Defendant 800-Flowers, Inc. ("Defendant").

## I.    INTRODUCTION

Plaintiffs bring this consumer class action against Defendant for systematic violations of New York's Automatic Renewal Law ("ARL") in connection with its Celebrations Passport membership program.  Defendant now moves to compel Plaintiffs' claims to arbitration based on their alleged assent to Terms of Use ("TOUs") appearing on the websites at issue and on purchases that are either unrelated to the Celebrations Passport subscription or that were made after their ARL claims accrued.  Critically, Defendant has produced no evidence whatsoever regarding the actual checkout screens, order confirmations, or website interfaces that Plaintiffs encountered when they enrolled in Celebrations Passport—the very transactions giving rise to this litigation. The Motion should be denied for two reasons.

*First*, the Motion should be denied because Defendant has failed to carry its threshold burden of establishing by a preponderance of the evidence that any valid agreement to arbitrate exists.  In the Motion, Defendant contends that Plaintiffs, by making purchases on Defendant's various websites, were provided notice of and manifested their assent to TOU appearing on those websites, which purportedly contain an arbitration provision.  In support of this claim, Defendant offers three categories of evidence: (1) unauthenticated and undated screenshots (or reconstructed visuals) of various website interfaces, (2) undated and generic order confirmation templates, and (3) declarations of employees who lack personal knowledge bearing on the relevant transactions.  The

---

[1]    Where the capitalized word "Motion" is used herein, it refers collectively to Defendant's Motion to Compel Arbitration and the Memorandum of Law in Support of the Motion to Compel Arbitration.

evidence Defendant has submitted falls far short of establishing that Plaintiffs had reasonably conspicuous notice of the TOU or that Plaintiffs manifested their assent to the TOU when they enrolled in the Celebrations Passport subscription program at issue. Had Plaintiffs been permitted to serve discovery, Plaintiffs would have sought evidence directly addressing these deficiencies. *See, e.g.*, *Wilson v. Huuuge, Inc.*, 944 F.3d 1212, 1220 (9th Cir. 2019). However, the Court denied Plaintiffs' request for leave to serve discovery pertaining to the Motion.[2] Plaintiffs hereby renew their request for leave to take discovery on the existence of an agreement to arbitrate.

Even without discovery, Defendant has produced no evidence whatsoever concerning the actual checkout screens, order confirmations, or website interfaces that Plaintiffs encountered when they purchased from Defendant's websites or enrolled in Celebrations Passport—the very

---

[2]     This Court's bundling rule requires that this Response be served on Defendant's Counsel as opposed to filed on the docket. The bundling rule therefore prevented Plaintiffs from timely filing this response and simultaneously appealing the nonfinal order issued on October 27, 2025, Order. So as to avoid waiving their right to challenge that Order, Plaintiffs preserve the right by challenging the October 27, 2025, Order herein as clearly erroneous and contrary to law for two reasons. First, the Order conflicts with Second Circuit precedent, which states that motions to compel arbitration are judged by summary judgment standards, *see Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003). *Bensadoun* establishes that parties are entitled to discovery before opposing such motions, as shown in *Zachman v. Hudson Valley Fed. Credit Union*, 49 F.4th 95, 104 (2d Cir. 2022), and other cases reversing district courts for insufficient records. *See, e.g., Interocean Shipping Co. v. Nat'l Shipping & Trading Corp.*, 462 F.2d 673, 677 (2d Cir. 1972) (ordering the district court to accept evidence on remand). Second, the Order is clearly erroneous because it failed to apply the "flexible standard of reasonableness and good cause" for limited discovery before formal discovery under Rule 26(d). Instead, the Court used a rigid assessment without reviewing the record. *See Strike 3 Holdings, LLC v. Doe*, No. 20CIV4501WFKVMS, 2021 WL 535218, at *1 (E.D.N.Y. Feb. 12, 2021). Specifically, the Order stated that "Plaintiffs neglect to explain why they waited," but in their letter seeking discovery (DE 22), Plaintiffs explained that they "promptly" started meet-and-confer discussions after reviewing the Motion, but were unable to reach an agreement. The same is confirmed by the emails attached to Defendant's response (DE 23-1), which show Plaintiffs' diligence in seeking the records informally before involving the Court. Furthermore, Plaintiffs' three discovery requests were reasonable because the Motion argues that Plaintiffs' subsequent purchases, nearly 100 in total, established their agreement to arbitrate, yet only four alleged purchase records are attached to the Motion. For these reasons, the nonfinal order should be set aside and the Motion denied with leave to renew upon the completion of limited discovery.

transactions at issue in this litigation.  Instead, Defendant relies upon unauthenticated and undated screenshots (or reconstructed visuals) unrelated to Plaintiffs' actual purchase.  These do not constitute evidence establishing that Defendant provided Plaintiffs with requisite notice and obtained their assent to arbitrate their claims.  Even if those graphics were relevant—and they are not—they fail to demonstrate reasonably conspicuous notice of any contractual terms or an unambiguous manifestation of assent.  The purported TOU links are buried in cluttered webpages containing multiple action icons, displayed in undistinguished font against basic backgrounds, obscured beneath large action buttons, and scattered among numerous competing hyperlinks and promotional content. Nothing about the presentation of these links would provide Plaintiffs (or any reasonable consumer) with clear and conspicuous notice that by clicking a checkout button, they were agreeing to be subject to the TOU or to be bound by arbitration provisions buried within the TOU.

*Second*, the Motion should be denied because the TOUs offered as evidence by Defendant are neither retroactive nor indefinite despite the Motion's argument to the contrary.  *See* Motion at 5–6, 9–10, 17.  In support of retroactivity, Defendant points to purchases occurring after Plaintiffs' initial subscriptions to Celebrations Passport.  None of the TOUs offered as evidence by Defendant are retroactive, however, because they each contain express temporal limitations and language evidencing the parties' intent to distinguish between current and future claims arising from a consumer's "use of" or Defendant's "sale of" goods or services within one year—a limitation Defendant conveniently ignores.  Defendant's retroactivity argument fails.  *See e.g.*, *Faroque v. Park W. Exec. Servs.*, No. 15-cv-6868, 2017 WL 1214482, at *4 (E.D.N.Y. Mar. 31, 2017); *Holick v. Cellular Sales of New York, LLC*, 802 F.3d 391, 394 (2d Cir. 2015).

The Motion also argues that the TOU from the Harry & David website in 2020 is indefinite. This argument fails on its face because the 2020 TOU is an expired contract, and any provisions

therein will survive the expiration of that agreement only where the provision relates to facts or events that occurred before its expiration or the right to be enforced had already vested under the agreement. While the Motion addresses neither argument, even if the Motion can be construed to argue that an arbitration right vested from purchases wholly disconnected from the automatic renewal violations alleged in the Second Amended Complaint ("Complaint"), that argument is foreclosed by *Litton Fin. Printing Div., a division of Litton Bus. Sys., Inc. v. N.L.R.B.*, 501 U.S. 190, 205–06 (1991). In *Litton*, the Supreme Court clarified that expired contracts release parties from their obligations. As a result, no arbitration right vested from purchases unrelated to the Celebrations Passport claims at issue. *See id.* Defendant's Motion should be denied.

## II.    FACTUAL BACKGROUND

Defendant's Celebrations Passport is a membership program that provides customers with free shipping and no service fees for the first year at $19.99, which then automatically renews each year thereafter. *See* DE [1] ¶ 1. On or about February 2, 2025, Defendant automatically charged Plaintiff Brundage's stored payment method approximately $31.19 (representing the $29.99 Automatic Renewal Fee plus taxes) for Celebrations Passport. *See id.* ¶ 29. In or around March 2021, Plaintiff Anna Garr ("Plaintiff Garr") purchased goods from Defendant's "1-800-Flowers" brand, and such purchase automatically and surreptitiously included the Celebrations Passport at the $19.99 initial subscription rate on the check-out page. *See id.* ¶ 30. In or around March 2022, Defendant automatically charged Plaintiff Garr's stored payment method approximately $33.00 (representing the $29.99 Automatic Renewal Fee plus taxes) for Celebrations Passport. *See id.* ¶ 32. After recognizing this unauthorized charge, Plaintiff Garr called Defendant to cancel the automatic renewal of the Celebrations Passport. *See* Declaration of Anna Garr ("Garr Decl."), attached hereto as **Exhibit A**.

Defendant has uniformly failed to disclose the key, statutorily required autorenewal terms, in a clear and conspicuous manner, prior to the customer's completion of the order process—namely: (a) the fact that the Celebrations Passport automatically renews, (b) that the renewal fee is $29.99, $10.00 higher than the introductory fee, and (c) that the customer's stored payment method will be charged every year, each of which is an independent violation of the ARL.  *See id.* ¶ 21.

On September 15, 2025, Defendant served Plaintiffs with its motion to compel arbitration pursuant to the bundling rule outlined in this Court's Individual Practices, Section VI.D.  The Motion seeks to compel Plaintiffs' claims to arbitration based upon prior or subsequent purchases made on Defendant's websites.  The Motion does not include order summaries, invoices, receipts, or screenshots and reconstructed visuals of its websites depicting Plaintiffs' actual checkout screens for their initial purchase containing their subscription to Celebrations Passport.

## III.    LEGAL STANDARD

The Federal Arbitration Act ("FAA") provides that "[a] written provision in . . . a contract . . . to settle by arbitration a controversy thereafter arising out of [the] contract . . . shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2.  The FAA cannot and "does not require parties to arbitrate when they have not agreed to do so."  *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016).  To grant a motion to compel arbitration, a court must find by a preponderance of the evidence that an agreement to arbitrate exists.  *DiTella v. TransUnion*, LLC, No. 23-cv-11028 (KPF), 2024 WL 3594567, at *4 (S.D.N.Y. July 31, 2024).  "Arbitration is a matter of contract and consent, and . . . disputes are subject to arbitration if, and only if, the parties actually agreed to arbitrate those disputes."  *Coinbase, Inc. v. Suski*, 602 U.S. 143, 145 (2024).  "[W]hether a contract was formed . . . is a question of state law."  *Specht v. Netscape Commc'ns Corp.*, 150 F. Supp. 2d 585, 590 (S.D.N.Y. 2001) ["*Specht I*"], *aff'd*, 306 F.3d 17 (2d Cir. 2002) ["*Specht II*"].

In resolving a motion to compel arbitration, courts "apply a 'standard similar to that applicable for a motion for summary judgment.'" *Nicosia*, 834 F.3d at 229. Under this standard, a court must "consider all relevant, admissible evidence submitted by the parties and contained in pleadings, depositions, answers to interrogatories, and admissions on file, together with ... affidavits." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 155 (2d Cir. 2002) (internal quotation marks omitted). "If there is an issue of fact as to the making of the agreement for arbitration, then a trial is necessary." *Bensadoun*, 316 F.3d at 175.

## IV.   ARGUMENT

### A.  Defendant Fails to Establish the Existence of an Agreement to Arbitrate.

"Under New York law, the party seeking arbitration bears the burden of proving, by a preponderance of the evidence, the existence and validity of a[] valid arbitration agreement." *Shehadeh v. Horizon Pharma USA, Inc.*, No. 20 CIV. 8107 (AT), 2021 WL 4176254, at *2 (S.D.N.Y. Sept. 14, 2021). "Issues of contract formation . . . are governed by the choice-of-law doctrine of the forum state, here, New York." *See Kai Peng v. Uber Techs., Inc.*, 237 F. Supp. 3d 36, 46 (E.D.N.Y. 2017).

In cases involving smartphone or online-based contracts, "[c]ourts around the country have recognized that [an] electronic 'click' can suffice to signify the acceptance of a contract . . . as long as the layout and language of the site give the user reasonable notice that a click will manifest assent to an agreement." *Meyer v. Uber Technologies, Inc.*, 868 F.3d 66, 75 (2d Cir. 2017). "Internet-based agreements between users of a platform and a service provider have been grouped into four categories: (1) browsewrap; (2) clickwrap; (3) scrollwrap; and (4) sign-in-wrap." *Feld v. Postmates, Inc.*, 442 F. Supp. 3d 825, 829 (S.D.N.Y. 2020). "Manifestation of assent to an online contract is not meaningfully different, and can be accomplished by 'words or silence, action or inaction,' so

long as the user 'intends to engage in the conduct and knows or has reason to know that the other party may infer from his conduct that he assents.'" *Nicosia*, 834 F.3d at 232. "One common way of alerting internet users to terms and conditions is via a 'clickwrap' agreement, which typically requires users to click an 'I agree' box after being presented with a list of terms or conditions of use." *See id*. Another form of agreement is the "browsewrap" agreement, where a company posts its terms and conditions on a website via a hyperlink at the bottom of the screen. *Meyer*, 868 F.3d at 75; *Nicosia*, 834 F.3d at 233. "Browsewrap agreements, on the other hand, do not require the user to expressly assent." *See Meyer*, 868 F.3d at 75. Finally, sign-wrap or purchase-wrap agreements advise the user that he or she is agreeing to the terms of service when purchasing a product or signing up for an account. *See id.* at 76.

The Second Circuit has "recognized that an offeree's manifestation of assent to an offeror's terms looks different for consumer contracts formed online, in which terms are usually unnegotiated and consumers often proceed without reading the fine print." *Edmundson v. Klarna, Inc.*, 85 F.4th 695, 703 (2d Cir. 2023). "Courts have ruled that, where there is no evidence that an internet or app user had actual knowledge of the contractual terms, the user will still be bound if (1) a reasonably prudent' person would be on *inquiry* notice" of the terms . . . and (2) the user unambiguously manifests assent through ... conduct that a reasonable person would understand to constitute assent[.]" *See id.* (internal citations and quotation marks omitted).

As shown below, Defendant has not met that burden as to any of the images provided. The Motion must be denied.

### i. Defendant's Evidence Fails to Establish that Plaintiff Brundage Agreed to Arbitrate her Claims.

Defendant contends Plaintiff Brundage agreed to arbitrate her claim based on either her alleged PayPal purchases from her mobile device on May 2, 2024 and May 31, 2025, or the twelve

alleged purchases from her credit card between August 25, 2024 and July 16, 2025. *See* Motion at 17. Interestingly, Defendant includes no records or evidence concerning Plaintiff Brundage's initial purchase of the Celebrations Passport, which occurred in or around February 2021. Defendant has offered nothing credible or admissible to establish, by a preponderance of the evidence, that Plaintiff Brundage agreed to arbitrate her claim arising from the 2022, 2023, or 2024 autorenewals of her February 2021 subscription to Celebrations Passport, or any purchase before or after her initial subscription.

"A reasonably prudent internet or smartphone user is on inquiry notice of contractual terms where the terms are presented in a clear and conspicuous way." *Edmundson*, 85 F.4th at 704. The analyzing court must look "to the design and content of the relevant interface to determine if the contract terms were presented to the offeree in [a] way that would put her on inquiry notice of such terms." *Starke v. SquareTrade, Inc.*, 913 F.3d 279, 289 (2d Cir. 2019). Where, as here, "an internet or smartphone user does not explicitly say 'I agree' to the contractual terms, a court must determine whether a reasonably prudent user would understand his or her conduct to constitute assent to those terms." *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 126 (2d Cir. 2012).

Here, Defendant contends that Plaintiff Brundage assented to two agreements containing arbitration provisions. Not so. The Motion should be denied.

### 1. Plaintiff Brundage Lacked Notice and Assent to the Cheryls.com Purchase-Wrap Agreement.

Defendant has failed to establish that the Cheryls.com images on page 5 of the Motion provided Plaintiff Brundage with conspicuous notice or that she assented to the TOU.

Courts have refused to enforce online agreements where nothing about the website suggests "that additional terms apply, and the presentation of terms is not directly adjacent to the . . . button so as to indicate that a user should construe clicking as acceptance." *See e.g., Nicosia*, F.3d at 236–

37.  The same is true when "[t]here are numerous other links on the webpage, in several different colors, fonts, and locations, which generally obscure the message."  *See id.* at 237.  Additionally, any language appearing on the site must be "spatially coupled with the mechanism for manifesting assent."  *See Meyer*, 868 F.3d at 78; *Schnabel*, 697 F.3d at 127.  Defendant's failure to grapple with any of these required inquiries dooms the Motion by itself.

The Motion's reliance on the Cherlys.com materials is equally insufficient to support arbitration as to Plaintiff Brundage in two significant ways.  First, and as a preliminary matter, neither of the declarations attached to the Motion can be considered competent evidence of either Plaintiff's notice or assent to arbitrate their claims.  For example, Defendant relies on a declaration from Jay Sweeney, Defendant's Senior Vice President of IT Operations, which lacks credibility under Fed. R. Evid. 901 and 1003 because he states, "Appropriate company personnel with whom I regularly work in the ordinary course of business searched for and presented to me 800-Flowers's records stored in the regular course of business regarding plaintiffs Anna Garr and Tiffany Brundage."  *See* Declaration of Jay Sweeney ("Sweeney Decl."), ¶ 3.  As he admits, this declarant has no personal knowledge that the alleged records were stored in the ordinary course of business, has no personal knowledge of the search methodology to obtain the records determined to be responsive, and further has no personal knowledge that such records were then-existing at the time of Plaintiff Brundage's alleged purchases.  *See Katzman v. C.I.A.*, 903 F.Supp. 434, 439 (E.D.N.Y. 1995) (requiring "affidavits from supervisory personnel in each of the three components at issue who personally oversaw the processing of the plaintiff's search request."); *The Few, the Proud, the Forgotten v. United States Dep't of Veterans Affs.*, 254 F. Supp. 3d 341, 361 (D. Conn. 2017) (holding that the declarations were not based on sufficient personal knowledge for summary judgment purposes because "the declarants provide few details about the searches in question").

Nor do the images offered in the Sweeney Declaration depict Plaintiff Brundage's own records from her experience on Defendant's websites, establish any mechanism or methodology for how these images were obtained or preserved, much less provide the Court with a method to assess the nature or origin of these documents. *See, e.g., Thorne v. Square, Inc.*, No. 20CV5119NGGTAM, 2022 WL 542383, at *1 (E.D.N.Y. Feb. 23, 2022) (refusing to consider screenshots because "the[] images do not depict what Plaintiffs viewed during the registration process."); *See* Declaration of Tiffany Brundage ("Brundage Decl."), attached hereto as **Exhibit B**, ¶ 5.

Defendant's reliance on the declaration from Kathleen Castellanos fares no better. Castellanos states that her personal knowledge is based on "research conducted by me and others as described below," and "information provided by others with whom I work[.]" *See* Declaration of Kathleen Castellanos ("Castellanos Decl."), ¶ 1. The declaration does not otherwise explain how any records search was completed, who completed what portions of which searches, what information was yielded or omitted from the searches, much less whether the "screens representative of the screens presented to Ms. Brundage" are the official records kept in the ordinary course of business, duplicates, or reconstructions of the website. *See Katzman*, 903 F.Supp. at 439; *The Few*, 254 F. Supp. 3d at 361. On their face, the images within the Castellanos declaration are reconstructed visuals, not taken from an actual mobile phone, and the declaration does not explain whether these graphics were kept in the ordinary course of business or created solely to support the Motion.[3]

---

[3]    Defendant fails to meet its burden on account of these evidentiary deficiencies, and the motion should be denied. In the alternative, Plaintiffs renew their request for leave to take discovery on the subject of the existence of an agreement to arbitrate. These evidentiary hurdles that Plaintiffs are entitled to explore in discovery filing this Response. *See Interbras Cayman Co. v. Orient Victory Shipping Co., S.A.*, 663 F.2d 4, 7 (2d Cir. 1981) (reversing order to arbitrate because the non-movant's "desire to cross-examine" the author of a document purporting to establish an agreement to arbitrate and finding that this desire was "well founded in view of [the non-movant's] charge that the [document] is factually incorrect and self-serving.").

The declarations should be rejected for additional reasons. Namely, the graphics contained therein and reproduced in the Motion are unauthenticated and undated,[4] lack any indication that these images were captured as part of Defendant's ordinary course of business, and lack any scintilla of reliability that they represent the checkout flow Plaintiff Brundage experienced on the day of her alleged purchases.[5] *See Opals on Ice Lingerie v. Bodylines Inc.*, 320 F.3d 362, 371 (2d Cir. 2003) (finding that an unauthenticated document could not be considered in reviewing a district court's grant of summary judgment on a claim of arbitrability). Indeed, the graphics do not reflect the websites as presented to Plaintiff Brundage. *See* Brundage Decl., ¶ 5; *see also Barrows v. Brinker Rest. Corp.*, 36 F.4th 45, 51 n.7 (2d Cir. 2022). As a final note concerning the declarations, neither of Defendant's declarants has satisfied Fed. R. Evid. 702 to the extent the graphics relied on in their declarations are reconstructions of how the websites may or may not have appeared on a given date. *See e.g., Rotman v. Progressive Ins. Co.*, 955 F. Supp. 2d 272, 284 (D. Vt. 2013) (rejecting accident reconstruction testimony because it did not rely on "reliable principles and methods" or otherwise satisfy Rule 702); *Bologna v. Wilson*, No. 20 CV 955 (CLP), 2025 WL 2792698, at *5 (E.D.N.Y. Oct. 1, 2025) (rejecting expert testimony not based on reconstruction analysis).[6]

---

[4]    *See Berger v. JetBlue Airways Corp.*, No. 22-CV-7374 (AMD) (TAM), 2024 WL 4107243, at *4 (E.D.N.Y. Sept. 6, 2024) ("the Court cannot rely on the undated screenshots of the defendants' websites, unaccompanied by any affidavit attesting to their origin, to determine whether the plaintiffs had notice of the CoCs or assented to the CoC terms when they bought their tickets."); *RDK NY Inc. v. City of New York*, No. 21-CV-01529(EK)(JAM), 2024 WL 4333704, at *4 (E.D.N.Y. Sept. 28, 2024) (refusing to consider a ground tariff document because the proponent failed to "explain where on their website the Tariff is posted, how many screens or layers a user of the site would need to click through to get there, or other relevant information.")

[5]    *See Thorne*, 2022 WL 542383, at *1.

[6]    *See also Mirror Worlds Techs., LLC v. Facebook, Inc.*, 588 F. Supp. 3d 526, 556 (S.D.N.Y. 2022) ("It is plainly unreasonable for a technical expert to rely on unauthenticated, undated screenshots in forming an opinion").

Second, even if this Court accepts the unauthenticated website images/renderings as proper evidence in support of the Motion, Defendant has provided no evidence that the TOU linked within the PayPal boxes are consistent with and redirected Plaintiffs to the TOU from Defendant's websites during the relevant period, rather than the TOU created specifically by PayPal and pertaining to Paypal's services.  *See Starke*, 913 F.3d at 293 (refusing to enforce agreement where the "'Terms & Conditions' hyperlink was spatially decoupled from the transaction").  Defendant's website contains three hyperlinks with the word "Terms" included.  These are indicated by the three red arrows below:



As presented in the declarations, this image leaves the Court unable to determine which of these three alleged hyperlinks (the light-gray "Terms & Conditions" under the $29.99/year language; the blue colored "Terms of Use" within the PayPal box; or the black-colored "Terms of Use" in the footer) contained the TOU referenced in and attached to the Sweeney Declaration. Equally problematic is that the blue-colored "Terms of Use" are specifically within the PayPal element of the website—and Defendant offers no explanation as to whether this alleged hyperlink included PayPal's TOU or the 800-flowers.com's TOU. To date, Plaintiffs have not had an opportunity to cross-examine either declarant regarding these ambiguities. No reasonable consumer could be expected to ferret out which among any of these three hyperlinks had which document that purportedly binds them to the associated transaction. Nor should this Court or Plaintiffs be required to guess which link contained which company's information because Defendant's declarations are silent as to the distinction between the three sets of alleged hyperlinks.

Stated differently, Defendant's website references "Terms" in three different places and in three different ways (as shown by the three red arrows superimposed on top of the image Defendant relies on in its Motion), which militates against the notion that users received reasonably conspicuous notice, as per Second Circuit precedent. This Circuit regularly refuses to enforce arbitration agreements where "[t]here are numerous other links on the webpage, in several different colors, fonts, and locations, which generally obscure the message." *See Nicosia*, 834 F.3d at 237. The links in Defendant's image are in blue, grey, and black, and are found in different sections of the site—one with Celebrations Passport details, another with PayPal information in a separate website element, and the last in the website's footer. This cluttered design is similar to that in *Nicosia*, where such cluttering meant there was no agreement to arbitrate. *See id.*; S*tarke*, 913 F.3d at 293 ("Like the interface in *Nicosia*, and in sharp contrast with the screen in *Meyer*, the interface here is cluttered

13

with diverse text, displayed in multiple colors, sizes and fonts, and features various buttons and promotional advertisements that distract the reader from the relevant hyperlink"); *Vincent v. Nat'l Debt Relief LLC*, No. 24-CV-440 (LJL), 2024 WL 3344227, at *12 (S.D.N.Y. July 8, 2024) ("even if the visitor were to scroll past a plethora of text in several colors, a multitude of buttons, and several promotional advertisements, the hyperlink to the Terms of Service is surrounded by several links to other pages, appearing in the middle of the center column of an area of the Website that contained eighteen links to other pages").

Decisions from other courts also support such a conclusion. *See e.g., Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1179 (9th Cir. 2014) ("Given the breadth of the range of technological savvy of online purchasers, consumers cannot be expected to ferret out hyperlinks to terms and conditions to which they have no reason to suspect they will be bound."); *In re Zappos.com, Inc., Customer Data Sec. Breach Litig.*, 893 F. Supp. 2d 1058, 1064 (D. Nev. 2012) ("No reasonable user would have reason to click on the Terms of Use, even those users who have alleged that they clicked and relied on statements found in adjacent links, such as the site's 'Privacy Policy.'").  Defendant's Motion fails to establish Plaintiff Brundage's notice or assent as it relates to the Cheryls.com material.  The Motion should be denied on this basis.

### 2. Plaintiff Brundage Lacked Notice and Assent to the Personalizationmall.com Purchase-Wrap Agreement.

Defendant has failed to establish that the Personalizationmall.com image on page 6 of the Motion provided Plaintiff Brundage with conspicuous notice and that she assented to the TOU.[7] Specifically, Defendant's placement of the statement referencing the TOU did not provide Plaintiff Brundage reasonably conspicuous notice because the statement is (1) located below the button on

---

[7]    Subject to and without waiver of their evidentiary objections, Plaintiffs incorporate such objections concerning the declarations from Section A as though referenced within this section.

the webpage (requiring that the screen be scrolled down to display the statement), (2) pictured in an indistinguishable color and font from surrounding text, and (3) much smaller in font than other words on the webpage.  Courts within this Circuit regularly refuse to enforce agreements where any or all of these factors are present. *See Meyer*, 868 F.3d at 75.

Then-Judge Sotomayor explained on behalf of the Second Circuit that "Internet users may have . . . as much time as they need[ ] to scroll through multiple screens on a webpage, but there is no reason to assume that viewers will scroll down to subsequent screens simply because screens are there." *Specht II*, 306 F.3d at 32.  Indeed, courts across the country refuse to enforce terms of service where, similar to Defendant's Personalizationmall.com website, the disclosure statement (stating by clicking the button the visitor was agreeing to the terms) appears in fine print at the bottom of a webpage, below the button, or where nothing alerts users that further terms appear below the button. *See e.g., Sullivan v. All Web Leads, Inc.*, No. 17 C 1307, 2017 WL 2378079, at *8 (N.D. Ill. June 1, 2017) ("Given the website's silence on quotes proceeding by phone and failure to alert users that legal disclosures appear below the 'Submit' box, the Court cannot, while drawing inferences in Sullivan's favor, find that All Web's alleged consent mechanism gave Sullivan reasonable notice sufficient for an enforceable written agreement[.]); *Gaker v. Citizens Disability, LLC*, No. 20-CV-11031-AK, 2023 WL 1777460 (D. Mass. Feb. 6, 2023) (same).

Plaintiff Brundage did not scroll through the entire Personalizationmall.com mobile site to see or reveal the text located beneath the "Place Your Order" button (nor was anything on the website instructing her to do so).  *See* Brundage Decl., ¶ 5.  Her experience on the website is similar to the situation described in *Starke*, where the email informed the consumer that "You're all set," whereas here, the "Place Your Order" button on Defendant's website suggests that the user need not look further.  *See Starke*, 913 F.3d at 294.  Moreover, Brundage's experience aligns with *Specht II* as

well, because the language at issue is obscured beneath the "Place Your Order" button, which is not visible to consumers in a single view. A reasonable consumer would not have discovered the hidden language unless they scrolled to reveal it. *See Specht II*, 306 F.3d at 32.

Other courts have also supported Plaintiffs' position on the Personalization.com website. Recently, the same issue with scrolling was addressed in *Carruth v. KD Creatives, Inc.*, where consumers could only see the disclosure language by scrolling to the bottom of the page. *See* No. 2:24-CV-02484-DAD-SCR, 2025 WL 2623291, at *1 (E.D. Cal. Sept. 11, 2025). In that case, the court declined to enforce the alleged agreement without even considering the plaintiff's evidence. *See id.* This court should follow the numerous cases that refuse to enforce arbitration agreements when a consumer must scroll to reveal language beneath a checkout button, such as in *Specht II*, 306 F.3d at 32; *Starke*, 913 F.3d at 294; *Sullivan*, 2017 WL 2378079, at *8; *Sgouros v. TransUnion Corp.*, No. 14 C 1850, 2015 WL 507584, at *6–7 ("It is unreasonable to expect users to scroll down the Window when they are not aware of a possibility of being bound by the terms in the Window."); *Hines v. Overstock.com, Inc.*, 668 F. Supp. 2d 362, 367 (E.D.N.Y. 2009), *aff'd*, 380 F. App'x 22 (2d Cir. 2010) (finding the plaintiff "lacked notice of the Terms and Conditions because the website did not prompt her to review the Terms and Conditions and because the link to the Terms and Conditions was not prominently displayed so as to provide reasonable notice of the Terms and Conditions."). The Court should deny the Motion on this basis. *See Vincent*, 2024 WL 3344227, at *11–12.

Alternatively, the Court should deny the Motion because the language obscured beneath the "Place Your Order" button also fails this Circuit's test for conspicuousness. The Second Circuit instructs courts to examine several factors to consider in determining conspicuousness, such as bolding, capitalizations, and underlining, which are to be assessed "in light of the whole webpage."

*See Nicosia*, 834 F.3d at 229; *cf. Meyer*, 868 F.3d at 79. Other courts also consider whether the relevant language is in a font color that differs from the surrounding text. *Applebaum v. Lyft, Inc.*, 263 F. Supp. 3d 454, 467 (S.D.N.Y. 2017) ("Courts have required more than mere coloring to indicate the existence of a hyperlink to a contract. Beyond the coloring, there were no familiar indicia to inform consumers that there was in fact a hyperlink that should be clicked and that a contract should be reviewed, such as words to that effect, underlining, bolding, capitalization, italicization, or large font."); *Berkson v. Gogo LLC*, 97 F. Supp. 3d 359, 404 (E.D.N.Y. 2015) (finding the terms were not "readily and obviously available" when the "hyperlink to the 'terms of use' was not in large font, all caps, or in bold"). The same conclusion reached in *Nicosia*, *Applebaum*, and *Berkson* should be applied here. Even if Defendant could establish that a particular visitor scrolled below the button (and it cannot), the presentation of the statement below the button—in small black font (the same font as the font in the remaining words of the sentence, all of which is in bold) against a white background, and dwarfed by the large "Place Your Order" button (as well as social media icons and the other much larger text on the screen, including in the footer and in the Order section)—nonetheless falls far short of the "clear and conspicuous" notice required for the Court to conclude that Plaintiff Brundage manifested her assent to the TOU when she clicked the button.

Other courts nationwide have reached the same conclusion. When advisory language is located beneath the action button and in a considerably smaller font, it deprives any reasonable customer of reasonably conspicuous notice. *See e.g., Godun v. JustAnswer LLC*, 135 F.4th 699, 711 (9th Cir. 2025) (finding the "district court correctly determined that the payment page that Plaintiff Davis saw did not put her on notice of any contractual terms [because] [t]he advisal text is printed in relatively small text and not located 'directly above or below' the action ('Start my

trial') button."); *Rocha v. Urban Outfitters, Inc.*, No. 23-cv-00542- AMO, 2024 WL 393486, at *4 (N.D. Cal. Feb. 1, 2024) ("Even changing the color of the "terms and conditions" text, without more, was not sufficient to alert plaintiffs to the fact that the text was hyperlinked."); *Berman v. Freedom Financial Network, LLC*, 30 F.4th 849, 854 (9th Cir. 2022) ("Simply underscoring words or phrases, as in the webpages at issue here, will often be insufficient to alert a reasonably prudent user that a clickable link exists."); *Wilson v. Redbox Automated Retail, LLC*, 448 F. Supp. 3d 873, 885 (N.D. Ill. 2020) ("Redbox's failure to add some additional distinguishing characteristic to the Terms of Use hyperlink is particularly glaring here"); *Wilson v. Redbox Automated Retail, LLC*, No. 19-cv-01993 at 15 (ECF No. 32) (N.D. Ill. Mar. 25, 2021) ("[T]he Court finds the gray disclosure text surrounding the hyperlinks not reasonably conspicuous because there is insufficient contrast between the gray text and the black background."); *Fisher v. Sutton Place/Pinnacle A.M.S.*, No. 1:07-CV-1537-DFHWTL, 2008 WL 2095417, at *2 (S.D. Ind. May 16, 2008) ("The fact that the agreement imposes an obligation to arbitrate disputes is clear and prominent. This was not an arbitration agreement buried in small, light-gray type on the back of an invoice or purchase order. No literate person completing and signing the form could have missed the agreement to arbitrate, which is the subject of five of eight pages in the document."); *Treinish v. iFit Inc.*, No. CV 22-4687-DMG (SKX), 2023 WL 2230431, at *4 (C.D. Cal. Feb. 2, 2023) (rejecting the use of underlining alone to identify a hyperlink, including where, similar to here, the defendant's "hyperlinks are underscored, but in a smaller [font] that is the same color as the rest of the text[.]").

Defendant relies heavily on *Meyer* and *Davitashvili v. Grubhub Inc.*, 131 F.4th 109 (2d Cir. 2023). Neither case presents a disclosure statement that is factually similar to Defendant's Personalizationmall.com website. For example, *Meyer* and *Davitashvili* are distinguishable because the TOUs in those cases were sufficiently conspicuous due to there being only one set of

hyperlinks in a different colored font from all remaining texts, unlike Defendant's Personalizationmall.com website in this case. *Contrast Meyer*, 868 F.3d at 78 (recognizing that the "Payment Screen is uncluttered, with only fields for the user to enter his or her credit card details, buttons to register for a user account[,]" and "the hyperlinks are in blue and underlined"); *Davitashvili*, 131 F.4th at 117 (recognizing that "the page is less cluttered than the webpage in *Nicosia*" and "the Grubhub web interface has hyperlinks to Grubhub's Terms of Use that are both spatially and temporally coupled with the checkout button."). Defendant's Personalizationmall.com website also did not present the TOU in a single screen without any scrolling. *Contrast Meyer*, 868 F.3d at 78 ("the entire screen is visible at once, and the user does not need to scroll beyond what is immediately visible to find notice of the Terms of Service."). These critical distinctions are not present in this case.

The Court should deny the Motion because Defendant has not established the existence of an agreement to arbitrate between itself and Plaintiff Brundage.

### ii. Defendant's Evidence Fails to Establish that Plaintiff Garr Agreed to Arbitrate her Claims.

Defendant contends Plaintiff Garr agreed to arbitrate her claim based on either her alleged purchase from the Harry & David desktop website on April 17, 2020, or the alleged purchase from the 1800flowers.com website on March 21, 2023—after she canceled Celebrations Passport. Defendant has offered nothing to establish by a preponderance of the evidence that Plaintiff Garr agreed to arbitrate her claim arising from the March 3, 2021 purchase, or any purchase before or after that date.

1.  **Plaintiff Garr Lacked Notice and Assent to the 1800flowers.com Purchase-Wrap Agreement.**

Defendant has failed to establish that the image from the Harry & David website on page 8 of the Motion provided Plaintiff Garr with conspicuous notice and that she assented to the TOU.[8] The Motion fails because the Harry & David TOU never applied for the following reasons.

First, in addition to the authentication and evidentiary points mentioned in Section A, the Harry & David website referenced on page 8 lacks reliability because it is undated and unauthenticated. *See Berger*, 2024 WL 4107243, at *4; *RDK NY*, 2024 WL 4333704, at *4; *Thorne*, 2022 WL 542383, at *1. Interestingly, while the Harry & David website includes a copyright date of 2018 at the bottom of the image, it displays an estimated delivery date in 2020 for the order represented therein. These discrepancies mirror the questionably undated image in *Torres v. Universal Music Grp. N.V.*, where the Court concluded the best path forward was to investigate the claim further. *See* No. 24-CV-05323 (LJL), 2025 WL 2710114, at *10 (S.D.N.Y. Sept. 23, 2025) (recognizing a discrepancy in the 2003 copyright date and the date Facebook was created). Therefore, the Sweeney declaration and the Harry & David image therein should be disregarded.

Second, even if the Court accepts the Harry & David images offered by Defendant as proper evidence (which it should not), the website mentions "Terms" in two separate locations—undermining the idea that users received reasonably conspicuous notice. After all, neither Plaintiff Garr nor any other consumer should be required to scout out every underlined phrase on a website to determine which ones are hyperlinked contracts and which ones are not. Precedent from this Circuit is clear that it is not their burden. *See Nguyen*, 763 F.3d at 1179 ("consumers cannot be expected to ferret out hyperlinks to terms and conditions to which they have no reason to suspect

---

[8]    Subject to and without waiver of their evidentiary objections, Plaintiffs incorporate such objections concerning the declarations from Section A as though referenced within this section.

they will be bound"); *accord Nicosia*, 834 F.3d at 237; S*tarke*, 913 F.3d at 293; *Vincent*, 2024 WL 3344227, at *12; *In re Zappos.com*, 893 F. Supp. 2d at 1064.

Third, the language beneath the button on the Harry & David website suffers from the same lack of reasonably conspicuous notice as the Personalizationmall.com website because they are the same. Nothing on the Harry & David website provides reasonably conspicuous notice to consumers because the font is a single color, the font size is the same, and there is nothing to distinguish the phrase "Terms of Use" as a hyperlink. Defendant's reliance on *Meyer* and *Davitashvili* is inapposite because here, unlike in those cases, the alleged hyperlinks are not in different colors. For this reason, the Motion fails. *See Nicosia*, 834 F.3d at 229; *Applebaum*, 263 F. Supp. 3d at 467 ("there were no familiar indicia to inform consumers that there was in fact a hyperlink that should be clicked and that a contract should be reviewed[.]"); *Berkson* 97 F. Supp. 3d at 404; *Godun*, 135 F.4th at 711; *Rocha*, 2024 WL 393486, at *4; *Berman*, 30 F.4th at 854; *Redbox I*, 448 F. Supp. 3d at 885; *Redbox II*, No. 19-cv-01993 at 15 (ECF No. 32); *Fisher*, 2008 WL 2095417, at *2; *Treinish*, 2023 WL 2230431, at *4.

Fourth, setting aside Defendant's failure to establish Plaintiff Garr's notice and assent to the Harry & David TOU, Defendant has not shown how any contractual term remains binding after the contract has expired. Plainly put, Defendant does not explain how a term within the 2020 Harry & David TOU remains binding when the contractual relationship expired with the single sale of a product from Defendant's website. Defendant does not argue in its Motion that any part of the transaction in 2020 establishes an agreement to arbitrate all future claims arising out of a completely new relationship—the autorenewal relationship from Celebrations Passport—between the Parties. Nor can Defendant.

Even if Defendant could make that argument, it is foreclosed by the Supreme Court decision in *Litton*. *See* 501 U.S. at 205–06. In that case, the Court ruled that "an expired contract has by its own terms released all its parties from their respective contractual obligations, except obligations already fixed under the contract but as yet unsatisfied." *See id.* at 206; *Xerox Corp. v. Loc. 14A, Rochester Reg'l Joint Bd., Xerographic Div. Workers United*, 128 F.4th 93, 100–01 (2d Cir. 2025). Courts interpreting *Litton* have held that a contractual provision can survive expiration in three situations: (1) it relates to facts or events that occurred before expiration; (2) an action after expiration infringes a right that had already vested under the agreement; or (3) under general contract interpretation principles, the contractual right remains in effect after the rest of the agreement expires. *See Hinnant v. Am. Ingenuity, LLC*, 554 F. Supp. 2d 576, 584 (E.D. Pa. 2008); *Bueche v. Fid. Nat. Mgmt. Servs., LLC*, No. 2:12-CV-1114-JAM-EFB, 2013 WL 3283508, at *4 (E.D. Cal. June 27, 2013); *Helenese v. Oracle Corp.*, No. 309-CV-351CFD, 2010 WL 670172, at *5 (D. Conn. Feb. 19, 2010). The Defendant's failure to address *Litton* suggests that none of these three circumstances apply. By its own admission, the Defendant concedes that Plaintiff Garr's alleged 2020 purchase did not include the Celebrations Passport, and thus her claim regarding the Celebrations Passport did not arise in 2020, nor did any arbitration right vest that year because no claim arose from that alleged sale. Consequently, no provision from the alleged Harry & David purchase survives beyond the single sale, if it even occurred—a fact Plaintiffs are unaware of without discovery from the Defendant. *See e.g., Bueche*, 2013 WL 3283508, at *4; *Helenese*, 2010 WL 670172, at *5 (denying motion to compel arbitration under *Litton* because "the dispute does not involve facts and occurrences arising before the [contract's] termination" and the plaintiff's claims had "nothing whatsoever to do with any contractual rights arising under, vested, or accrued under the [contract].").

**2.  The 1800Flowers.com TOU Do Not Apply Retroactively.**

Defendant fails to meet its burden to establish the existence of an agreement to arbitrate for the additional and independent reason that the TOU from 1800flowers.com does not apply retroactively to Plaintiff Garr.[9]

"In deciding whether a dispute is arbitrable, we must answer two questions: (1) whether the parties agreed to arbitrate, and, if so, (2) whether the scope of that agreement encompasses the claims at issue." *Bank Julius Baer & Co. v. Waxfield Ltd.,* 424 F.3d 278, 281 (2d Cir. 2005). Where the parties have agreed to arbitrate, the court looks next to whether the agreement is broad or narrow by looking for temporal limitations. *See Holick*, 802 F.3d at 394. Even where there is no temporal limitation, "there may be other reasons to temporally limit the scope of the arbitration clause." *See Calderon v. Breadberry Inc.*, No. 22CV1601MKBLB, 2023 WL 1861639, at *5 (E.D.N.Y. Feb. 9, 2023).

Here, the arbitration provision within the 1800flowers.com TOU contains a temporal limitation, but the Motion conveniently runs out of ink each time that Defendant references this arbitration provision. The final line within the arbitration provision states, "Any Claim you may have must be commenced within one (1) year after such Claim arises." *See* Sweeney Decl., Ex. B. The word "Claim" is a defined term that refers to the prefatory phrase:

> any and all claims, disputes, controversies, actions or proceedings relating to, or arising out of, the creation, production, manufacture, distribution, promotion, marketing, advertising (including oral and written statements), **use of**, exploitation, **or sale of** any and all products and services of the Company and its Affiliates, through all merchandising channels

---

[9]     Subject to and without waiver of their evidentiary objections, Plaintiffs incorporate such objections concerning the declarations from Section A as though referenced within this section.

*See id.* (emphasis added on conduct-specific language).  While Plaintiffs acknowledge (only for Plaintiff Garr's discussion of 1800flowers.com) that this time limit applies to any Claim related to Celebrations Passport, it is specifically restricted to Claims arising within one year of entering the agreement.  Defendant's reliance on *Schapp v. MasTec Servs. Co.*, No. 6:12-CV-841 (LEK/DEP), 2014 WL 1311937, at *3 (N.D.N.Y. Mar. 31. 2014), *Ryan, Beck & Co. v. Fakih*, 268 F. Supp. 2d 210, 224 n. 28 (E.D.N.Y. 2003),[10] and *Bellevue v. Exxon Mobile Corp.*, No. 19-cv-652 (BMC) (LB), 2019 WL 1459041, at *3 (E.D.N.Y. Apr. 2, 2019) is misplaced because none of these cases involved a time limitation at all, even if only limiting the statute of limitations.  In the present case, there is a time limitation.  Therefore, retroactivity does not apply because Plaintiff Garr's March 3, 2021 purchase occurred outside the one-year time period, rendering any subsequent arbitration provision inapplicable to her claim.

This conclusion is reinforced by the specific language in the 1800flowers.com TOU, which clearly indicates the parties' intent.  The introductory section clearly states that the TOU will "govern your use of: (i) our Website."  *See* Sweeney Decl., Ex. A.  Additionally, the TOU limits the definition of "Claims" to those related to a customer's "use" or Defendant's "sale of any and all products" through "this Service."  *See id.* at 29.  The *Faroque v. Park W. Exec. Servs.* case is relevant to this point because the court interpreted a contract's reference to "This Agreement" as indicating that the contract was meant to be distinct from previous agreements.  *See* No. 15-cv-6868, 2017 WL 1214482, at *4 (E.D.N.Y. Mar. 31, 2017).  Similarly, here, the 1800flowers.com's TOU reference

---

[10]    While Defendant references *Ryan, Beck & Co.* in its Motion to support the retroactivity argument, retroactivity does not apply here.  *See* Motion at 20.  Instead, *Ryan, Beck & Co.* should be reviewed for a different issue—this Court must determine arbitrability because none of the agreements delegate the arbitrability decision to an arbitrator.  *See* 268 F. Supp. 2d at 220 ("whether an arbitration clause . . . applies to a particular type of controversy is for the court, not the arbitrator, to resolve.") (internal quotation marks omitted).

to use of "this Service" is conduct-specific and differentiates prior uses from a consumer's current use of Defendant's websites.  Therefore, the 1800flowers.com TOU is subject to the *Holick* rule against retroactivity, given its explicit temporal limitations and specific language addressing current uses of Defendant's websites or services.  The Motion should be denied.

### B.  Defendant's Motion Fails to Invoke Prior Conduct as Requisite Notice

Grasping at straws, Defendant argues the 1800flowers.com TOU do not limit the arbitration provision to post-agreement disputes. *See* Motion at 20.  Defendant relies on *Bassett v. Elec. Arts Inc.* to support its argument that post-purchase arbitration agreements are retroactive to prior purchases.  *See* No. 13-CV-04208(MKB)(SMG), 2015 WL 1298644 (E.D.N.Y. Feb. 9, 2015).  This argument falls flat.

*Bassett* is clearly distinguishable because, as argued above, Defendant has failed to make the threshold showing that either Plaintiff had reasonably conspicuous notice of or assented to any TOU. In *Bassett*, the plaintiff bought video games at retail stores in Brooklyn.  *See* 2015 WL 1298644, at *6.  At the time of purchase, the plaintiff elected not to view the back of the video game packaging, which mentioned the terms of service for EA Online and provided notice of a website where those terms were available for review.  *See id.*  Despite the Motion's suggestion to the contrary, the court specifically refused to rely on "precedents involving post-purchase arbitration agreements" because the cases relied on by the parties were "not precisely on point because they involve arbitration agreements related to the particular product purchased and not an additional service or application." *See id.* at *5.  Instead, the court concluded that there was a binding agreement to arbitrate because the plaintiff "undoubtedly registered some of the first products he acquired before making his more recent purchases, and by this means as well had the opportunity before making all but his earliest

purchases to become fully familiar with defendant's terms of service and the fact that they would be presented only when registering an already purchased game for online access." *See id.* at *6.

Here, Defendant has provided no evidence that Plaintiffs had reasonably noticeable notice of any TOU, much less notice comparable to the clear writing on the back of video games in *Bassett*. Instead, this court should consider *Schnabel v. Trilegiant*, as discussed in *Bassett*, since its facts are more similar to Plaintiffs' interactions with Defendant's websites. For example, "[t]he defendant in *Schnabel* sent the Terms of Service to customers via email and thereafter claimed assent could be inferred from the customers' subsequent payments of monthly fees, even though those fees were automatically charged to credit cards." *See Bassett*, 2015 WL 1298644, at *7; *Schnabel*, 697 F.3d at 120, 128. The Second Circuit rejected this argument, finding that notice cannot be inferred from the plaintiffs' subsequent conduct because the "defendant had effectively obscured the details of the terms and conditions." *See Bassett*, 2015 WL 1298644, at *7; *Schnabel*, 697 F.3d at 127–28. The same is true here. Defendant did not provide reasonably conspicuous notice to Plaintiffs, but still Defendant claims that their subsequent purchases somehow reflect notice of some TOU containing an arbitration provision without explaining how. This argument should be quickly dismissed. *See Wilson*, 944 F.3d at 1221 (rejecting the argument that "repeated use of the app places him on constructive notice since it was likely he would stumble upon the Terms during that time period" because "there is no reason to assume the users will click on the settings menu simply because it exists."); *Benson v. Double Down Interactive, LLC*, 798 F. App'x 117, 120 (9th Cir. 2020) ("Repeated use of a website or mobile application does not contribute to constructive notice because users are no more likely to stumble upon inconspicuous hyperlinks on their hundredth or thousandth visit than on their first"); *Vincent*, 2024 WL 3344227, at *12 (relying on *Benson*). The Motion should be denied for this reason.

### C. Defendant's Request for a Stay Should Be Denied

Lastly, Defendant argues that "this action should be stayed while Plaintiff's individual claims are arbitrated." *See* Motion at 22. Again, Defendant is incorrect. Because Defendant has not met its burden to show that an agreement to arbitrate exists, and because the arbitration agreement within the 1800flowers.com TOU is not retroactive, Defendant's request for a stay must be rejected.[11] The Motion should be denied in its entirety.

## V.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court deny Defendant's Motion in its entirety.

Dated: November 12, 2025                    Respectfully Submitted,

By:   */s/ Elliot Jackson*

Elliot Jackson
New York Attorney Reg. No. 6076798
Email:  ejackson@hedinllp.com
Frank S. Hedin*
Email:  fhedin@hedinllp.com
**HEDIN LLP**
1395 Brickell Ave., Suite 610
Miami, Florida 33131-3302
Telephone:     (305) 357-2107

*Counsel for Plaintiffs and the Putative Class*

**Pro Hac Vice Application Forthcoming*

---

[11]    Defendant's alternate request to strike the class claims must also be rejected on this basis.

## CERTIFICATE OF SERVICE

I hereby certify, pursuant to the Court's Individual Practices, Section VI.D, that this Response and Memorandum of Law in Opposition to Defendant's Motion to Compel Arbitration was emailed to the Defendant on November 12, 2025, and that notice of the same was filed with the Court via the Court's CM/ECF system.

*/s/ Elliot O. Jackson*

## WORD COUNT CERTIFICATION

I hereby certify, pursuant to the Court's Individual Practices and Local Civil Rule 7.1, that this Response and Memorandum of Law in Opposition to Defendant's Motion to Compel Arbitration contains 8,749 words and complies with the 8,750-word limit articulated in the Court's Individual Practices and Local Civil Rule 7.1.

*/s/ Elliot O. Jackson*